# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE ASSOCIATION OF NEW JERSEY CHIROPRACTORS, INC., *et al.*, | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : Case No. 19-cv-21973 (JMV) (JBC) <br> : <br> : |
| v. | : <br> : |
| DATA ISIGHT, INC., *et al.*, | : <br> : <br> : |
| Defendants. | : <br> : |

# MEMORANDUM OF LAW IN SUPPORT OF CIGNA'S
# MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ....................................................................................4

ARGUMENT .........................................................................................................7

     I.      PLAINTIFFS CANNOT BRING ERISA CLAIMS............................7

           A.     Dr. Scordilis Has Not Alleged a Valid Assignment. .................8

           B.     Dr. Loewrigkeit Has Not Alleged That He Received an
                   Assignment for Any Cigna Claim. ...........................................10

           C.     ANJC Lacks Associational Standing.......................................11

     II.     THE COMPLAINT FAILS TO STATE ANY CLAIMS...................12

           A.     Plaintiffs' Count I Fails..........................................................12

           B.     Plaintiffs' Count II Fails. ........................................................19

           C.     Plaintiffs' Count III Fails. .......................................................19

CONCLUSION ....................................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*In re Aetna UCR Litig.*,
  2015 WL 3970168 (D.N.J. June 30, 2015)................................................8, 12, 21

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
  890 F.3d 445 (3d Cir. 2018) ..................................................................9

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health
  Ins. Co.*,
  2018 WL 5630030 (D.N.J. Oct. 31, 2018) ....................................................7, 14

*Bickhart v. Carpenters Health & Welfare Fund of Phila. & Vicinity*,
  732 F. App'x 147 (3d Cir. 2018) ..........................................................16

*Chang v. Life Ins. Co. of N. Am.*,
  2008 WL 2478379 (D.N.J. June 17, 2008).................................................17

*Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*,
  143 F. App'x 433 (3d Cir. 2005) ..........................................................10

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  2013 WL 5780815 (D.N.J. Oct. 25, 2013) .................................................10

*Cohen v. Indep. Blue Cross*,
  2012 WL 6626131 (D.N.J. Dec. 19, 2012)...................................................15

*Dupont v. Sklarsky*,
  2009 WL 776947 (D.N.J. Mar. 20, 2009) .................................................17

*Fleisher v. Standard Ins. Co.*,
  679 F.3d 116 (3d Cir. 2012) ................................................................13

*Franco v. Conn. Gen. Life Ins. Co.*,
  289 F.R.D. 121 (D.N.J. 2013)..............................................................14

*Franco v. Conn. Gen. Life Ins. Co.*,
  647 F. App'x 76 (3d Cir. 2016) ..........................................................11, 12

ii

*Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011),
    *aff'd in part, vacated in part on other grounds by* 647 F. App'x 76 (3d Cir. 2016)..........................................................................21

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)......................................................................8

*Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*,
    859 F. Supp. 2d 706 (D.N.J. 2012)............................................5

*Laufenberg v. Ne. Carpenters Pension Fund*,
    2019 WL 6975090 (D.N.J. Dec. 19, 2019).............................17

*Lemoine v. Empire Blue Cross Blue Shield*,
    2018 WL 1773498 (D.N.J. Apr. 12, 2018)..............................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)......................................................................7

*Malishka v. MetLife*,
    639 F. App'x 788 (3d Cir. 2015) ............................................20

*Mazzarino v. Prudential Ins. Co. of Am.*,
    2015 WL 1399048 (D.N.J. Mar. 26, 2015) ............................20

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
    801 F.3d 369 (3d Cir. 2015) .....................................................7

*N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of N.J., Inc.*,
    2010 WL 11594901 (D.N.J. Jan. 12, 2010), *report & recommendation adopted sub nom.* 2010 WL 11693191 (D.N.J. Mar. 5, 2010)........................................................................18

*Neurosurgical Assocs. of N.J., P.C. v. Aetna, Inc.*,
    2019 WL 851280 (D.N.J. Feb. 22, 2019) ................................9

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).....................................................................16

*Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins.*,
    2018 WL 2441768 (D.N.J. May 31, 2018)................7, 16, 17

ME1 32706526v.1

*Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*,
2015 WL 4387981 (D.N.J. July 15, 2015) .......................................................10

*Shah v. Horizon Blue Cross Blue Shield*,
2016 WL 4499551, (D.N.J. Aug. 25, 2016) .....................................................17

*Syed v. Hercules Inc.*,
214 F.3d 155 (3d Cir. 2000) .............................................................................21

*Tanksley v. Daniels*,
902 F.3d 165 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1175 (2019),
*reh'g denied*, 139 S. Ct. 1596 (2019) ...................................................5

*Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*,
2019 WL 4855439 (D.N.J. Oct. 2, 2019) ...........................................................7

*Univ. Spine Ctr. v. Cigna Health & Life Ins. Co.*,
2018 WL 4144684 (D.N.J. Aug. 29, 2018) .......................................................14

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
903 F. Supp. 2d 880 (C.D. Cal. 2012) ..............................................................21

## Statutes

29 U.S.C. 1001, *et seq.* ...........................................................................................1

29 U.S.C. § 1022 ...................................................................................................19

29 U.S.C. § 1024(b)(4) ....................................................................................19, 21

ERISA § 502(a)(1)(B) ...................................................................................*passim*

ERISA § 502(a)(3) .........................................................................................*passim*

ERISA § 502(c) ...................................................................................3, 19, 20, 21

ERISA § 502(c)(1) ................................................................................................20

ERISA § 503 ..................................................................................................*passim*

ERISA § 503(a) .....................................................................................................12

iv

## **INTRODUCTION**

Plaintiffs' ERISA claims should be dismissed because not only do Plaintiffs lack the right to sue under their patients' ERISA-governed plans, but they fail to identify any provision of those plans that Cigna breached or any provision of the ERISA statute that Cigna violated.[1]

<u>First</u>, because ERISA does not permit Plaintiffs Peter Scordilis, D.C. and Eric Loewrigkeit, D.C. (together, the "Provider Plaintiffs") or the Association of New Jersey Chiropractors, Inc. (the "ANJC") to bring claims directly, the Provider Plaintiffs purport to raise claims as assignees of their patients, and the ANJC purports to assert claims derivatively on behalf of its association members.  Neither theory works.

The Provider Plaintiffs have not identified assignments that would permit them to bring ERISA claims.  Dr. Scordilis's assignment forms make clear that any claims would have been assigned to Dr. Scordilis's practice—not Dr. Scordilis himself.  Moreover, two of the three patients he identifies in the Complaint were covered by a plan with an anti-assignment clause, which means that these patients

---

[1]     For the purpose of this brief, "Cigna" collectively refers to Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (improperly named as "Cigna Insurance Co."), "Aetna" refers to Aetna Life Insurance Company, and "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, *et seq.*  Unless otherwise noted, all emphasis is added and all internal citations and quotations are omitted.

could not assign their claims to Dr. Scordilis in the first place.   As for Dr. Loewrigkeit, he does not identify a single claim for which he received an assignment, so he has also failed to establish that he has a right to bring any ERISA claim.   And the ANJC lacks associational standing, because it has not identified any members with the right to bring ERISA claims, nor could it pursue these claims without the individual participation of its members.  (*See* Sec. I., pp. 7-12.)

Second, Plaintiffs' core allegation is that Cigna and Aetna did not pay their claims in accordance with plan terms—but they have not identified even one benefits claim that was actually underpaid under their patients' plans.   In fact, Dr. Loewrigkeit does not identify ***any*** claims at all that he submitted to Cigna or Aetna.   And while Dr. Scordilis identifies a single claim, contending that Cigna was required to pay it at 70% of his billed charges, the plan governing this claim makes clear he was entitled to 70% of the Medicare-based "***Maximum Reimbursable Charge***"—not 70% of billed charges—and Dr. Scordilis nowhere alleges he did not receive that amount.   That alone means Plaintiffs have failed to state an ERISA § 502(a)(1)(B) claim.  (*See* Sec. II.A., p. 13.)

Third, Plaintiffs' attempt to frame their ERISA claims as breaches of fiduciary duties under ERISA § 502(a)(3) or as a failure to provide Plaintiffs with a "full and fair review" under ERISA § 503 is also deficient.   As with their ERISA § 502(a)(1)(B) count, the predicate for these claims is that Cigna underpaid for

2

Plaintiffs' services—but again, Plaintiffs have not identified even one instance where Cigna's plan terms required it to pay more than what it has already paid. Plaintiffs' ERISA § 502(a)(3) claim also fails for the separate reason that Plaintiffs seek the same relief here as they do under their ERISA § 502(a)(1)(B) claim. And last, their ERISA § 503 claim fails because § 503 does not provide Plaintiffs with a private cause of action. (*See* Secs. II.A. & B., pp. 13, 19.)

Finally, Plaintiffs' tack-on claim under Count III for statutory penalties under ERISA § 502(c) for Cigna's alleged failure to provide plan documents also fails. A ERISA § 502(c) claim can be brought only against the plan administrator. But Cigna is the claims administrator, so it is not the proper party to this claim. Separately but just as fatal to this claim, Plaintiffs acknowledge that Cigna in fact provided the plan documents that they requested. And while Plaintiffs claim Cigna was required to do more and should have also disclosed its vendors' pricing methodologies, ERISA § 502(c) does not impose statutory penalties for failing to provide such information. In fact, ERISA does not require the disclosure of this additional information at all. (*See* Sec. II.C., p. 20.)

For these reasons, and as further explained below, Plaintiffs' Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

Cigna administers claims for employer-sponsored benefit plans. (Compl. "Overview" ¶ 3.)[2]   In determining what benefits their plans should offer, employers may allow plan members to seek healthcare from "in-network" or "out-of-network" providers. (*Id*. ¶ 3.) In-network providers contract with Cigna to provide services at agreed prices; out-of-network providers do not. (*See* Compl. "Summary of Pls.' Allegations" ¶¶ 2-3.)

Because out-of-network providers have not agreed to rates with Cigna, plans have various ways to encourage members to see in-network providers as a way to control plan costs. Relevant to this case, employers will often limit the amount that the plan will cover for out-of-network providers' claims to a "Maximum Reimbursable Charge" or "MRC." For example, in the case of Dr. Scordilis's patient, S.G., the plan limited the MRC to

> *the lesser of*:   The *provider's normal charge* for a similar service or supply; *or* [a] percentage of a fee schedule developed by Cigna that is *based on a methodology similar to a methodology used by Medicare* to determine the allowable fee for the same or similar services within the geographic area. In some cases, a Medicare-based fee schedule is not used and the **MRC** is determined based on the lesser of the: Provider's normal charge for a similar service or supply;

---

[2]   Because the Complaint does not continue paragraph numbers across sections, citations to the Complaint include references both to the Complaint's section heading and the paragraph number(s) in that section.

> or [an] [a]mount charged by providers for that service or
> supply in the geographic area where the service or supply
> is received.

(*See* Certification of P. Taylor (the "Certification"), Ex. 1 at 73-74 (emphasis added).)[3]

Another critical way in which plans may control costs for out-of-network claims is by requiring members to pay a portion of their costs for covered healthcare services through deductibles, copayments, or coinsurance (the "member cost-share"), which are typically higher if the provider is out-of-network. (*Id*. at 19-25.) So in the case of S.G.'s plan, the plan will cover 70% of the MRC for out-of-network claims after the member satisfies his or her deductible, and the member will be responsible for the remaining 30%. (*Id*. at 20-21.) Members also remain responsible for the difference between the out-of-network provider's billed charges and what the plan covers (the "balance bill"). (*Id*. at 19-21, 70.) Members face no such risk with in-network providers, who have agreed to accept what the plan covers as payment in full. (*Id*. at 70.)

---

[3]     In assessing the sufficiency of Plaintiffs' allegations, the Court "[is] not limited to the four corners of the complaint" and may consider on a motion to dismiss evidence that is "integral to or explicitly relied upon" in the Complaint, such as the plan documents that govern Plaintiffs' benefits claims. *See Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1175 (2019), *reh'g denied*, 139 S. Ct. 1596 (2019). Further, "[w]hen allegations contained in a complaint are contradicted by the document it cites, the document controls" and may be considered on a motion to dismiss. *See Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012).

In some cases, Cigna may use the services of a third-party vendor like Multiplan's Data iSight to "reprice" the claim. (Compl. "The Repricing Issue" ¶¶ 1-2.) In these cases, Cigna informs the provider that it has applied the third-party vendor's rate to the claim and that they should contact Cigna before balance billing the member. (*Id*. ¶ 4.) As a result, a member may avoid a costly balance bill for their out-of-network claim, even if the repriced amount is higher than what the plan would otherwise cover.

Drs. Loewrigkeit and Scordilis are two out-of-network chiropractors with Cigna. The ANJC is an association for chiropractors in New Jersey. (*Id.* "Summary of Pls.' Allegations" ¶ 1.) Plaintiffs' core allegation is that Cigna and Aetna use the services of MultiPlan and Data iSight to reprice out-of-network chiropractic claims below what patients' plans require. (*Id.*) But neither Provider Plaintiff actually identifies any claim that was underpaid under the terms of their patients' plans. In fact, Dr. Loewrigkeit does not identify a single patient that he treated, and while Dr. Scordilis identifies a single claim (for patient S.G.) that he alleges was underpaid, he erroneously claims that he was owed 70% of his ***billed charges***, when the plan specifically states that it will cover 70% of the ***MRC***. Critically, the Complaint does not identify a single claim for which Cigna paid less than the MRC specified in the applicable benefits plan.

## ARGUMENT

## I.   PLAINTIFFS CANNOT BRING ERISA CLAIMS.

Plaintiffs' Complaint should be dismissed because they do not have a right to bring any of their claims under ERISA.[4]  Only plan participants or beneficiaries may bring claims under ERISA § 502(a)(1)(B), *see Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, 2018 WL 5630030, at *3 (D.N.J. Oct. 31, 2018), and only plan participants, beneficiaries, or fiduciaries may bring claims under ERISA § 502(a)(3).  *See Plastic Surgery Ctr., P.A. v. Cigna Health & Life Ins. Co.*, 2018 WL 2441768, at *13 (D.N.J. May 31, 2018).  Plaintiffs—two of whom are chiropractors and the third, a chiropractic association—are none of those.[5]  Thus, the only way that Drs. Scordilis and Loewrigkeit may bring their

---

[4]      Some courts refer to the right to bring an ERISA claim on behalf of a plan participant or beneficiary as derivative or statutory standing.  *See, e.g.*, *Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, 2019 WL 4855439, at *3 (D.N.J. Oct. 2, 2019) ("To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing."); *but see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (explaining that the term "statutory standing" is "misleading" because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case").

[5]      Plaintiffs do not purport to be either plan participants or fiduciaries.  While Plaintiffs assert that they qualify as "beneficiaries" based on assignments the Provider Plaintiffs receive from their patients (*see* Compl. Count I ¶¶ 5-6), they are wrong as a technical matter because, as the Third Circuit has found, in such cases a provider is suing as the assignee of a participant or beneficiary, not as the beneficiary itself.  *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

7

ERISA claims is if each of them can adequately (1) "demonstrate that they have assignments from ERISA plan members" *and* (2) "that the assignments encompass the ERISA claims pursued."  *See In re Aetna UCR Litig.*, 2015 WL 3970168, at *11 (D.N.J. June 30, 2015).   And to maintain *any* claim, the ANJC—who indisputably is not a plan participant, beneficiary, fiduciary, or assignee—must adequately plead that it has associational standing.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).   Neither Dr. Scordilis, Dr. Loewrigkeit, nor the ANJC has made this showing.

### A.    Dr. Scordilis Has Not Alleged a Valid Assignment.

Dr. Scordilis has not adequately pled that he has a right to bring his ERISA claims as his patients' assignee.

First, Dr. Scordilis's own assignment forms demonstrate that he is not the right assignee.  He alleges that his patients assigned their rights to "the Provider." But as each of his patients' assignments makes clear, "the Provider" is not Dr. Scordilis; it is Scordilis Chiropractic.  (*See* Certification Ex. 2 (assignment from S.G. to Scordilis Chiropractic as "the Provider"); Certification Ex. 3 (same for F.V.); Certification Ex. 4 (same for E.T.).)  Dr. Scordilis cannot rely on the purported assignments made to Scordilis Chiropractic—a different legal entity—to establish that he has a right to bring an ERISA claim.  *See In re Aetna*, 2015 WL 3970168, at *12 (finding that "the authorization on which [the Provider Plaintiff]

8

relies fails to support his ERISA claims because it authorizes his patient's insurance carrier" to make payment to "Eastern Monmouth Physical Therapy, LLC").

Second, even if Dr. Scordilis himself had received the assignments, two of the three ERISA plans referenced in the Complaint have anti-assignment provisions, so those purported assignments are void. As the Third Circuit recently held, "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable," so a provider cannot bring a claim as an assignee if the ERISA plan prohibits the claim from being assigned. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018). The ERISA plans for patients F.V. and E.T. have the following anti-assignment provision:

> You may not assign to any party, including, but not limited to, a provider of healthcare services/items, your right to benefits under this plan, nor may you assign any administrative, statutory, or legal rights or causes of action you may have under ERISA, including, but not limited to, any right to make a claim for plan benefits, to request plan or other documents, to file appeals of denied claims or grievances, or to file lawsuits under ERISA. Any attempt to assign such rights shall be void and unenforceable under all circumstances.

*See* Certification Ex. 5 at 40 (F.V.'s plan); Certification Ex. 6 at 40 (E.T.'s plan).

This clear anti-assignment language means that Dr. Scordilis cannot maintain any ERISA claims on behalf of either of his patients F.V. or E.T. *See*

9

*Neurosurgical Assocs. of N.J., P.C. v. Aetna, Inc.*, 2019 WL 851280, at *3 (D.N.J. Feb. 22, 2019) ("[Plaintiff] does not have a valid assignment, and as a matter of law, does not have standing to assert an ERISA claim.").

### B.    Dr. Loewrigkeit Has Not Alleged That He Received an Assignment for Any Cigna Claim.

Dr. Scordilis's purported assignments do not give him standing to assert his claims, for the reasons outlined above.  But Dr. Loewrigkeit fares even worse:  he has not identified even a single claim administered by Cigna for which he received an assignment, let alone alleged that he received an assignment that was made to him personally (as opposed to his practice), or an assignment that actually covers his purported causes of action.  That is fatal to his claims, since "a court should know the terms and parameters of an assignment before satisfying itself that a provider has derivative standing to sue under ERISA."  *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2013 WL 5780815, at *6 (D.N.J. Oct. 25, 2013); *see also id.* (granting dismissal where "Plaintiffs' complaint fails to include any of the specific language of the assignment").  Without alleging at the very least that (1) a proper assignment exists and (2) the terms of that assignment specifically cover each of the causes of action that Dr. Loewrigkeit seeks to bring, his claims cannot stand. *See Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981, at *6 (D.N.J. July 15, 2015) ("Plaintiffs have not established the existence of 'properly assigned claims' to satisfy their burden of showing that the

10

Provider Plaintiffs have standing to sue under ERISA."); *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 435 (3d Cir. 2005) (finding no standing by provider in the absence of "evidence of any assignments executed by the plan participants," and noting that "even assuming that such assignments do exist, we still have no way of knowing their terms or parameters").

### C.    ANJC Lacks Associational Standing.

The ANJC purports to bring its claims on behalf of its members, not itself. (*See* Compl. 1.)  To have standing to raise these derivative claims, the ANJC must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76, 82 (3d Cir. 2016).

The ANJC cannot satisfy the first and third requirements.  For the first, the ANJC nowhere alleges that the Provider Plaintiffs are actually its members.  But even if it did, that would not be enough because, as explained in Sections I.A and I.B, neither Provider Plaintiff adequately alleged that he received an assignment that would give him the right to sue under ERISA.  Because there are no allegations suggesting that Provider Plaintiffs "have standing to sue in their own right," the ANJC has no derivative right to sue either.  *See id.*

11

The ANJC also cannot satisfy the third requirement because, for the ANJC to prove its claims, the Court would have to conduct a claim-by-claim specific analysis and "a close examination of the terms of each of the many employer-sponsored healthcare plans administered by CIGNA in the context of the specific healthcare services rendered by each member of the Association Plaintiffs." *Id.* at 83. This would include, at a minimum, having to resolve "issues such as the existence of assignments to Association Plaintiffs' members, exhaustion of plan remedies, and the amounts billed and actually paid"—for each of the disputed claims. *Id.* As the Third Circuit previously concluded, the third prong for associational standing cannot be met in such circumstances because "participation of members of the Association Plaintiffs would be ***essential*** to resolve these issues." *Id.*; *see also In re Aetna*, 2015 WL 3970168, at *12 (finding no associational standing in part because "[r]esolution of the ERISA claims thus requires careful examination, on a provider-by-provider basis, of the assignments signed by patients and whether they contain the language required for a valid assignment of ERISA").

## II. THE COMPLAINT FAILS TO STATE ANY CLAIMS.

### A. Plaintiffs' Count I Fails.

Plaintiffs' Count I against Cigna is actually an amalgam of several different theories—purported violations of ERISA §§ 502(a)(1)(B), 502(a)(3), and 503(a).

(Compl. Count I ¶¶ 2-5.)   The core of Plaintiffs' claim, though, is that Cigna made an adverse benefits determination by allegedly underpaying Plaintiffs' patients' claims.   (*See id.*)  But no matter which theory Plaintiffs rely on, Count I should be dismissed.

First, to state a claim under ERISA § 502(a)(1)(B), Plaintiffs must allege a "'right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).   But Plaintiffs have not identified any right under their plan terms that Cigna violated.   In fact, Dr. Loewrigkeit has not identified any benefit claim at all, so he cannot possibly have identified an instance where Cigna failed to pay a benefits claim in accordance with plan terms.

Dr. Scordilis's ERISA § 502(a)(1)(B) claim similarly fails because he does not identify a plan term that Cigna actually violated.   The only claim that Dr. Scordilis identifies as allegedly underpaid is for patient S.G. on May 31, 2019. (Compl. "The Repricing Issue" ¶ 6.)  Dr. Scordilis alleges that this member was covered by a plan that "requires reimbursement of out-of-network chiropractic claims at ***70% of the charge*** after deductible satisfaction" (*id.*)—meaning 70% of his billed charge.

But in fact, S.G.'s plan shows that the covered benefit for this claim was not 70% of Dr. Scordilis's full out-of-network charge (*i.e.*, his billed charge).  Rather,

13

it was 70%, "subject to the **MRC [Maximum Reimbursable Charge]**, after **Deductible**." (Certification Ex. 1 at 21 (S.G. SPD, at 21) (emphasis in original)). And as the plan makes clear, the MRC is not the same as the provider's billed charge, but rather "***the lesser of***:   The provider's ***normal*** charge for a similar service or supply; ***or*** [a] percentage of a fee schedule developed by Cigna that is based on a methodology similar to a methodology used by Medicare to determine the allowable fee for the same or similar services within the geographic area." *Id*. at 19 (emphasis added); *see also Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 138 (D.N.J. 2013) (explaining the difference between a provider's "normal charge" and "billed charge").

So to plausibly allege that S.G.'s claim was underpaid in violation of plan terms, it is not enough for Dr. Scordilis to allege that it was paid at less than 70% of his billed charges; he must allege that it was paid at less than 70% of the ***MRC***. Dr. Scordilis has made no such allegations.  He has therefore failed to allege that S.G.'s claim was underpaid under the terms of S.G.'s plan, and his ERISA § 502(a)(1)(B) claim fails.  *See Atl. Plastic*, 2018 WL 5630030, at *7 (dismissing ERISA claims based on allegations that Anthem underpaid plaintiffs' claims by refusing to pay the plaintiffs' "usual and customary charge," where plaintiffs "fail[ed] to identify any specific Plan provision entitling payment of benefit based on the 'usual and customary charge'"); *Univ. Spine Ctr. v. Cigna Health & Life*

14

*Ins. Co.*, 2018 WL 4144684, at *3 (D.N.J. Aug. 29, 2018) ("join[ing] recent holdings of other judges of this district" in "emphasiz[ing] that an ERISA claim requires plaintiff to allege and prove an entitlement to benefits due to him *under the terms of his plan*," and dismissing ERISA claim where provider-plaintiff failed to allege what specific plan provisions were violated) (emphasis in original); *Lemoine v. Empire Blue Cross Blue Shield*, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018) (dismissing ERISA § 502(a)(1)(B) claim where plaintiff failed to allege "which actual portions of the plans were violated, when they were violated, or how they were violated").

And finally, because Drs. Loewrigkeit and Scordilis have failed to state an ERISA § 502(a)(1)(B) claim, so too does the ANJC, as it fails to identify any other claims that its members purportedly have.

Second, Plaintiffs' ERISA § 502(a)(3) claim under Count I similarly fails. As with their theory under ERISA § 502(a)(1)(B), Plaintiffs purport to bring an ERISA § 502(a)(3) claim based on their allegation that Cigna underpaid the Provider Plaintiffs' claims under the terms of their patients' ERISA plans. (*See* Compl. Count I, ¶¶ 5, 8.) Plaintiffs' ERISA § 502(a)(3) claim therefore fails for the same reason as their claim under ERISA § 502(a)(1)(B): Plaintiffs have failed to identify any instance where Cigna failed to pay a benefits claim for a patient in accordance with plan terms. *See Cohen v. Indep. Blue Cross*, 2012 WL 6626131,

15

at *10 (D.N.J. Dec. 19, 2012) ("The Court finds that Plaintiff's conclusory assertions regarding the benefits determination . . . to be insufficient to support his claim . . . that Defendants breached their fiduciary duties to him.").

Plaintiffs' ERISA § 502(a)(3) claim should be dismissed for another separate reason:  the relief they seek here is duplicative of the relief they seek under their ERISA § 502(a)(1)(B) benefits claim.  As the Third Circuit has warned, courts should be "wary of fiduciary breach claims under ERISA that . . . are 'actually [claims] based on denial of benefits under the terms of [a] plan.'" *Bickhart v. Carpenters Health & Welfare Fund of Phila. & Vicinity*, 732 F. App'x 147, 153 (3d Cir. 2018).  Thus, "dismissal is warranted, even at the motion to dismiss stage, where a plaintiff asserts claims for equitable relief under § 502(a)(3) that are duplicative of his or her claims for benefits under § 502(a)(1)(B)." *Plastic Surgery Ctr.*, 2018 WL 2441768, at *14 (collecting cases that dismissed ERISA § 502(a)(3) claims on this basis).

The same outcome should follow here, since the relief that Plaintiffs seek under their ERISA § 502(a)(3) claim—additional payment on their claims, a declaration that Defendants violated ERISA and the terms of their patients' plans, and "injunctive and declaratory relief to remedy Defendants' [alleged] continuing violation of these provisions" (*see* Compl. Count I ¶ 8.)—is all available under their ERISA § 502(a)(1)(B) claim.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41,

53 (1987) ("Relief may take the form of accrued benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits."). Dismissal is thus proper. *See Plastic Surgery Ctr.*, 2018 WL 2441768, at \*14; *see also Dupont v. Sklarsky*, 2009 WL 776947, at \*9 (D.N.J. Mar. 20, 2009) (dismissing claim for equitable relief because "Plaintiff's remedy of an equitable lien does not constitute additional relief that would not be provided through his 502(a)(1)(B) claim"); *Chang v. Life Ins. Co. of N. Am.*, 2008 WL 2478379, at \*4 (D.N.J. June 17, 2008) (dismissing claim for equitable relief where ERISA § 502(a)(3) claim "appear[ed] to be nothing more than an attempt to couch the request for relief it had previously set forth [under ERISA § 502(a)(1)(B)] . . . in the language of equity").

Third, Plaintiffs cannot save Count I with a conclusory allegation that Cigna failed to provide "a full and fair review" under ERISA § 503. (Compl. Count I ¶¶ 3-4.) As an initial matter, courts in this district routinely dismiss ERISA § 503 claims for the simple reason that ERISA § 503 and its accompanying regulations do not provide a private cause of action. *See, e.g., Laufenberg v. Ne. Carpenters Pension Fund*, 2019 WL 6975090, at \*12 (D.N.J. Dec. 19, 2019) ("The Court will dismiss Count Two because Section 503 and 29 C.F.R. 2560.503-1 do not provide for a private cause of action."); *Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, 2016 WL 4499551, at \*11 (D.N.J. Aug. 25, 2016) (granting dismissal and

noting that "recent decisions in this District . . . have also reached the conclusion that neither Section 503 of ERISA, 29 U.S.C. § 1133, nor its accompanying regulation, 29 C.F.R. § 2560.503-1, gives rise to a private cause of action").

Even if ERISA § 503 had a private cause of action (which it does not), Plaintiffs' claim would fail still. Plaintiffs' only basis for alleging that Cigna violated ERISA § 503 is that Cigna allegedly "[made] claim payments that are inconsistent with or unauthorized by the terms of Members' [Evidence of Coverage]s and SPDs as well as in violation of the federal ERISA laws." (Compl. Count I ¶ 7.) But again, Plaintiffs have failed to allege any instance where Cigna failed to comply with the terms of a patient's plan.

Finally, in the Complaint's background section, Plaintiffs allege that Cigna violated New Jersey Prompt Pay Law and that Cigna's explanation of benefits ("EOBs") to patients "misleadingly" state that patients did not owe more than the plan's "repriced amount," again without providing a single example of an actual claim where either occurred. (Compl. "Summary of Pls.' Allegations" ¶¶ 3-4.) Plaintiffs do not rely on these allegations to actually state any of their three counts—nor could they. Any claim based on a state "prompt pay law" would be preempted by ERISA. *See, e.g.*, *N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of N.J., Inc.*, 2010 WL 11594901, at \*4 (D.N.J. Jan. 12, 2010), *report & recommendation adopted sub nom.* 2010 WL 11693191 (D.N.J. Mar. 5, 2010).

And while Plaintiffs claim that state and federal laws require doctors to collect patient coinsurance (which is a plan-defined percentage of the amount allowed under the plan), nowhere do Plaintiffs allege that their patients' EOBs actually told patients not to pay these coinsurance amounts.

## B.    Plaintiffs' Count II Fails.

Plaintiffs couch Count II as one for a "violation of fiduciary duties of loyalty and due care," but this Count actually relies on the same allegations as those underlying Count I:  that Defendants allegedly "engag[ed] in arbitrary and capricious adverse claim determinations by improperly repricing out of network plan benefits in contradiction to the plan documents."  (Compl. Count II ¶ 11; *see also id.* ¶ 13 (Defendants allegedly "repric[ed] claims below the rates required by the plans.").)  This claim therefore fails for all the same reasons as Count I:  (1) Plaintiffs fail to allege any instance where Cigna actually underpaid a claim under the terms of a benefits plan; (2) Plaintiffs seek no relief under ERISA § 502(a)(3) that they could not receive under ERISA § 502(a)(1)(B); and (3) ERISA § 503 does not provide Plaintiffs with a cause of action.

## C.    Plaintiffs' Count III Fails.

Under ERISA § 502(c), a "plan administrator" faces a statutory penalty if it does not provide, upon thirty days' written request, a plan participant or beneficiary with a copy of the "summary plan description."   29 U.S.C.

§ 1024(b)(4); 29 U.S.C. § 1022.  Plaintiffs allege in Count III that Cigna violated this provision by failing to provide the Provider Plaintiffs with certain requested "information" in a timely fashion.  (*See* Compl. Count III ¶¶ 18-19.)  As noted above, because they have alleged that they are ERISA assignees, the Provider Plaintiffs have no right to bring this claim.  (*See* Secs. I.A. & B., *supra* at pp. 8-10.)  But even if they could, this claim fails for at least three other independent reasons.

First, Plaintiffs cannot maintain this claim against Cigna.  "Only the Plan Administrator can be liable for statutory penalties for failing to provide the Plan Documents."  *Malishka v. MetLife*, 639 F. App'x 788, 791 (3d Cir. 2015) (affirming dismissal of claim for statutory penalties against party that was not the designated plan administrator); *Mazzarino v. Prudential Ins. Co. of Am.*, 2015 WL 1399048, at *10 (D.N.J. Mar. 26, 2015) ("For the purposes of assessing statutory penalties under Section 502(c)(1), claims are proper only as against the plan administrator.").  But Cigna is not the plan administrator under any of the three plans that Plaintiffs reference in the complaint.  (*See* Certification Ex. 1 at 65 (S.G. SPD, p. 65); Certification Ex. 5 at 52 (F.V. SPD, p. 52); Certification Ex. 6 at 52 (E.T. SPD, p. 52))  Cigna is therefore not a proper defendant for Plaintiffs' ERISA § 502(c) claim, and Count III fails for this reason alone.

Second, Plaintiffs have not alleged that Cigna failed to provide any information required to be disclosed under ERISA § 502(c).  In fact, Plaintiffs assert the opposite:  they acknowledge that "Defendants *have responded with the required plan documents*."   (Compl. "Overview" ¶ 11.)  And while Plaintiffs allege that Cigna "refuse[s] to disclose the plan rates or repricing formulas utilized by Data iSight / Multiplan in their reduction in reimbursement to plaintiffs" (*id.*), the Third Circuit has held that Plaintiffs cannot seek statutory penalties for an alleged failure to provide information outside the specific plan documents outlined in 29 U.S.C. §1024(b)(4).  *See Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) ("We have previously held that § 503 sets forth only the disclosure obligations of 'the Plan' and that it does not establish that those obligations are enforceable through the sanctions of § 502(c).").

Third, putting aside that ERISA § 502(c) does not apply here, ERISA does not obligate Cigna to disclose its out-of-network pricing methodologies to Plaintiffs.   As courts have recognized, ERISA specifies what plan-related documents and information must be disclosed, but those disclosure obligations "do[] not 'include information concerning the methodology for determining UCR in particular or, more generally, for calculating the amount owed to the participant or beneficiary on an [out-of-network] claim.'"   *See In re Aetna*, 2015 WL 3970168, at *13 (quoting *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792,

821 (D.N.J. 2011), *aff'd in part*, *vacated in part on other grounds by* 647 F. App'x 76 (3d Cir. 2016)); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 922 (C.D. Cal. 2012) (same).

## CONCLUSION

For the reasons stated above, Cigna respectfully requests that this Court grant its motion to dismiss Plaintiffs' Complaint.

Dated:  February 21, 2020

                                                    s/ Penelope M. Taylor_____
Joshua B. Simon, Esq.                               Penelope M. Taylor, Esq.
Warren Haskel, Esq.                                 MCCARTER & ENGLISH, LLP
Dmitriy Tishyevich, Esq.                            Four Gateway Center
KIRKLAND & ELLIS LLP                                100 Mulberry Street
601 Lexington Avenue                                Newark, New Jersey  07102
New York, New York  10022                           (973) 639-7947
(212) 446-4800

ME1 32706526v.1