**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE ASSOCIATION OF NEW JERSEY CHIROPRACTORS, INC., SCORDILIS CHIROPRACTIC, PA, & ERIC LOEWRIGKEIT, DC, | Civil Action No. 2:19-CV-21973-JMV-JBC |
| Plaintiffs, | |
| v. | |
| DATA ISIGHT, INC.; MULTIPLAN, INC.; CONNECTICUT GENERAL LIFE INSURANCE CO.; CIGNA INSURANCE CO.; AETNA HEALTH INC.; AETNA HEALTH INSURANCE CO., | **1ST AMENDED COMPLAINT & JURY DEMAND** |
| Defendants, | |

Plaintiffs, the Association of New Jersey Chiropractors, Inc. ("ANJC"), with its principal place of business located at 77 Brant Avenue, Clark, New Jersey, Scordilis Chiropractic, PA, by its principal and authorized representative Peter Scordilis, DC, ("Scordilis") with a principal place of business of925 Allwood Road, Clifton, New Jersey, and Eric Loewrigkeit, DC, ("Loewrigkeit") with a principal place of business of 17 Woodport Road, Sparta, New Jersey (collectively, "Plaintiffs"), on behalf of themselves, and ANJC members similarly situated, by way of a Verified Complaint against Defendants, hereby allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, inter alia, the investigation made by and through their attorneys, as follows:

1

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

1. Plaintiff, the Association of New Jersey Chiropractors, Inc., is a New Jersey Not-for-Profit 501(c.)(6) Corporation which consists of over 1,900 chiropractors licensed to practice chiropractic in the State of New Jersey.  Its purpose is to promote the chiropractic profession and the interests of chiropractors in the State of New Jersey. It has a primary office location at 77 Brant Avenue, Clark, New Jersey.  As licensed chiropractic physicians, ANJC members accept assignment of benefits from their patients that are CIGNA and/or Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law.  A vast majority of ANJC members have accepted assignment of benefits from at least one or more patients that are a subscriber of Aetna and one or more patients that are subscribers of CIGNA for claims in the past six years.  In addition, neither the claims asserted or the relief sought on behalf of ANJC members in this matter require an individualized review of Aetna and/or CIGNA plan documents as the allegations concern the global repricing activities of Data iSight and Multiplan which violate state and federal law on its face, specifically the federal ERISA laws, state prompt pay and out of network disclosure laws as specified in more detail hereafter.

2. Plaintiff, Scordilis Chiropractic, PA, is a New Jersey Professional Association owned and operated by Peter Scordilis, DC, a chiropractic physician licensed to practice in the State of New Jersey which does not participate with any of the

Defendants as a participating practice and has a primary office located at 925 Allwood Road, Clifton, New Jersey.  As a Professional Association formed and operating in New Jersey through its licensed chiropractic physicians, Scordilis Chiropractic accepts assignment of benefits from their patients that are CIGNA and/or Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law.  As such, Scordilis Chiropractic, PA, has standing to pursue the claims herein.

3. Plaintiff, Dr. Eric Lowerigkeit, DC, is a chiropractic physician licensed to practice in the State of New Jersey who does participate with Aetna as a participating chiropractor and has a primary office located at 17 Woodport Road, Sparta, New Jersey.  As a licensed chiropractic physician practicing in New Jersey, Lowerigkeit accepts assignment of benefits from his patients that are CIGNA and/or Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law.  As such, Dr. Lowerigkeit has standing to pursue the claims herein.

4. Defendant Data ISight, Inc., is a is a foreign corporation authorized to perform the business of insurance and/or third-party administration of insurance in New Jersey and is performing the business of insurance and/or third-party administration of insurance in New Jersey with a registered address of 222 West Las Colinas Boulevard, Suite 1500, Irving, Texas 75039.

5.   Defendant Multiplan, Inc., is a is a foreign corporation authorized to perform the business of insurance and/or third party administration of insurance in New Jersey and is performing the business of insurance and/or third-party administration of insurance in New Jersey and is a parent, sister or related entity with Defendant Data iSight, with a registered address of 115 5th Avenue, New York, NY  10003.  Multiplan is a licensed / certified organized delivery system with the New Jersey Department of Banking and Insurance.

6.   Defendant Connecticut General Life Insurance Company, is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 908 Cottage Grove Road, Hartford, CT  06152.

7.   Defendant CIGNA Insurance Co., is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 908 Cottage Grove Road, Hartford, CT  06152.

8.   Defendant Aetna Health, Inc., is a New Jersey Corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 980 Jolly Road, U11S, Blue Bell, Pennsylvania.

9.   Defendant Aetna Health Insurance Company, is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing

the business of insurance in New Jersey with a registered address of 980 Jolly Road, U11S, Blue Bell, Pennsylvania.

10. Defendants offer, insure, underwrite and/or administer commercial health benefits, including administration of self-funded health plans governed by the federal ERISA statutes, including those of patients for whom Scordilis and Lowerigkeit and other ANJC members have provided health care services, as detailed herein.

11. Due to the manner in which they function, all of the Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards.  In the Complaint, "Aetna" and "CIGNA" refers to all named Defendants and all predecessors, successors and subsidiaries to which these allegations pertain.

## JURISDICTION & VENUE

1. Defendants' actions in administering employer-sponsored health care plans, including determining reimbursements for Providers who supply health care services to Aetna and CIGNA insureds pursuant to the terms and conditions of the health care plans, are governed by ERISA, 29 U.S.C. § 1001, 502(a)(2)&(3), *et seq.* Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

2. Venue is appropriate in this District for Plaintiffs' claims under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because Plaintiffs reside and operate here, the services, claims, and policies that are the subject of this lawsuit occurred here, and Defendants are authorized to do business here, either directly or through wholly owned and

controlled subsidiaries and are doing business here.

## **OVERVIEW OF PLAINTIFFS' LEGAL CLAIMS**

3.   As the companies that issue, insure, design, and/or administer the employee benefit plans through which a number of Plaintiffs' patients received their insurance, Defendants are subject to ERISA, and its governing regulations.  Further, due to the role Defendants played in administering the health care plans which insured the patients of Plaintiffs that are at issue in this matter, including making coverage and benefit decisions, calculating reimbursement rates, and deciding appeals, Defendants have assumed the role as fiduciaries under ERISA.

4.   Under ERISA, Defendants are required, among other things, to comply with the terms and conditions of their health care plans and the plans they administer and federal laws and to accord their subscribers and their providers an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements.

5.   The federal common law of trusts, applicable to ERISA fiduciaries, further requires that fiduciaries deal honestly with members and their assignees and adhere to certain specific fiduciary standards in their dealings.

6.   In offering and administering their health care plans, Defendants assume the role of "Plan Administrator," as that term is defined under ERISA, in that they interpret and apply the plan terms, makes all coverage decisions, calculate reimbursement

rates, issue Explanation of Benefits, process appeals, and provide for payment to subscribers and/or their providers.

7. As the Plan Administrators, Defendants also assume various obligations specified under ERISA.   These obligations include providing their subscribers with a Summary Plan Description ("SPD"), a document designed to describe in layperson's language the material terms, conditions and limitations of the health care plan.  The full details of the plan, which are summarized in the SPD, are contained in the Evidence of Coverage ("EOC") that governs each member's health care plan.

8. Defendants are obligated under ERISA to make their coverage determinations in a manner consistent with the disclosures contained in the SPD and federal law.  If the employer, rather than Defendants, are deemed to be the Plan Administrator, Defendants remain responsible for ensuring that the SPD complies with the law under their duties as co-fiduciaries as provided in ERISA, 29 U.S.C. § 1105, even if the employer prepares or disseminates the SPD.

9. Prior to providing chiropractic care to their patients that are subscribers of Defendants' health plans, Scordilis and Loewrigkreit and other ANJC members obtain written assignment of benefits from their patients.

10. These assignment of benefit forms executed by each patient, for example, assigns to the plaintiffs the following rights:

> The undersigned also designates the Provider to the fullest extent permissible under the Employee Retirement Income Security Act of 1974 ("ERISA") as provided in 29 CFR 2560-503-1(b)(4) and under any applicable state and federal law as their representative / attorney-in-fact to pursue claims and appeals and/or litigation on my behalf and exercise all rights connected with my health care benefit plan or insurance policy and/or administrators, contractors, vendors or other third parties contracted with my health care benefit plan including but not limited to initial claims determinations, appeals of any benefit determinations, obtaining records and related plan

documents, obtaining documents from administrators, contractors, vendors or other third parties contracted with my health care benefit plan, claiming on my behalf medical or other health care benefits, pursuing insurance or plan reimbursement and to pursue any other applicable remedies as may be necessary and with regards to my health benefit plan or insurance policy along with any incidental powers and duties to effectuate same. This is to be construed as the broadest possible designation and assignment of benefits as permitted by law.

11. The patients of plaintiffs and other ANJC members further have requested full copies of the SPD of their plans which detail the required reimbursement rates the plan documents provide for.  Defendants have responded with the required plan documents and refuse to disclose the plan rates or repricing formulas utilized by Data iSight / Multiplan in their reduction in reimbursement to plaintiffs.

12. Prior to providing services, plaintiffs verified with defendants that the patients had out-of-network benefits and that the services provided were covered services, and then proceeded to provide services in reliance upon such representations.

**The Repricing Issue**

1) Data iSight and/or Multiplan is a third-party vendor that is hired by insurance companies, including Aetna and CIGNA, to "reprice" (reduce) insurance reimbursements to various doctors, including Scordilis and Lowerigkeit and a vast majority of all other ANJC members, for health care services performed in New Jersey by New Jersey doctors on New Jersey patients.

2) Data ISight has been making unsolicited contact with out-of-network doctors, including plaintiffs, and "repricing" (reducing) what they should legally be paid under the patients' health plan to a lower amount which is in direct contradiction with the health plan SPD and EOC provisions.

8

3) When the doctor attempts to appeal or otherwise dispute the repricing, it delays claim payments for up to six months or more which is in violation of the New Jersey Prompt Pay Law as well as federal ERISA law.

4) Even worse, an Explanation of Benefits ("EOB") form is issued to the patient showing the repriced amount as the allowed amount which misleadingly informs the patient that that is the maximum the doctor is entitled to and that the doctor cannot attempt to collect from them any amount that exceeds the repriced amount.

5) This violates both state and federal law which imposes a statutory duty upon doctors to collect coinsurance payments from patients, including but not limited to the *Out-of-Network Protection, Transparency, Cost Containment and Accountability Act*, N.J.S.A. 26:2SS-1 *et. seq.*

6) A specific example of the improper actions of Defendant CIGNA is as follows. Patient "SG" was a subscriber to a self-funded plan of the MassMutual Financial Group that was administered by CIGNA. The Plan SPD requires reimbursement of out-of-network chiropractic claims at 70% of the maximum allowed amount after deductible satisfaction. The Specific Plan provision violated in this instance is the following clause on page 15 of the October 2014 MassMutual SPD:

**Maximum Reimbursable Charge**
For out-of-network charges, the Plan pays benefits based on the Maximum Reimbursable Charge. Maximum Reimbursable Charge is determined based on the lesser of:
- The provider's normal charge for a similar service or supply; or

- A percentage of a fee schedule that Cigna developed based on a methodology similar to a methodology used by Medicare to determine the allowable fee for similar services within the geographic area.

(MassMutual Summary Plan Description, p. 15 (Oct. 2014).

7) Scordilis submitted claims for chiropractic services performed on 5/31/19 to CIGNA for a patient insured under the MassMutual plan in the amount of $230.00 which should have been reimbursed under the plan terms at $161.00 as acknowledged by the EOB issued by CIGNA as the proper out-of-network reimbursement pursuant to the MassMutual SPD.

8)  CIGNA, through its vendor Data iSight, imposed *an additional $87.57 reduction below what the MassMutual SPD required to be paid* to Scordilis and paid only $99.71 on the claim.  The EOB issued by CIGNA indicates the patient saved 81% of the total amount billed due to the repricing by Data iSight.   The EOB misleadingly indicates that the doctor can only collect $42.72 in coinsurance from the patient and not the $87.57 Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient.

9) Scordilis appealed the improper payment on 7/29/19 and all levels of appeal were thereafter denied.  The SPD of the MassMutual Plan expressly provides the subscriber "the right to bring a civil action under ERISA Section 502(a) if you are not satisfied with the appeal process."

10) Defendants have also violated the SPDs of multiple additional plans issued by Defendants as follows.

11) Specifically, the Versa Products Company CIGNA OAP HDHP Plan effective January 1, 2019, provides as follows for the reimbursement of out-of-network claims:

**Maximum Reimbursable Charge**

Maximum reimbursable charge is determined based upon the lesser of the provider's normal charge for a similar service or supply; or a percentage of a fee schedule that CIGNA has developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market. In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:
- The providers normal charge for a similar service or supply; or
- The 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as complied by a database selected by CIGNA.

(Versa Products Company CIGNA OAP HDHP Plan, p.16-17, effective January 1, 2019).

12) Similar to the situation described above, CIGNA determined an allowed amount pursuant to the SPD plan terms above and sent the claim with the allowed amount to Data iSight  who then repriced the reimbursement below the amount required to be paid by the Versa Products SPD in violation of the express provisions of the Versa Products SPD.

13) The Bluerock Real Estate Holdings, LLC, HDHP CIGNA OAP Plan, effective January 1, 2019, provides as follows for the reimbursement of out-of-network claims:

11

**Maximum Reimbursable Charge**

Maximum reimbursable charge is determined based upon the lesser of the provider's normal charge for a similar service or supply; or a percentage of a fee schedule that CIGNA has developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market.  In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:

- The providers normal charge for a similar service or supply; or
- The 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as complied by a database selected by CIGNA.

(Blue Rock Real Estate Holdings, LLC, CIGNA OAP HDHP Plan, p.18-22, effective January 1, 2019).

14) Similar to the situation described above, CIGNA determined an allowed amount pursuant to the SPD plan terms above and sent the claim with the allowed amount to Data iSight  who then repriced the reimbursement below the amount required to be paid by the Blue Rock SPD in violation of the express provisions of the Blue Rock SPD.

15) The CBRE Open Access Plus Medical Benefits 2000 Plan effective January 1, 2019, provides as follows for the reimbursement of out-of-network claims:

**Outpatient Short Term Rehabilitative Therapy and Chiropractic Services.**
60% after plan deductible for out of network providers.

(CBRE Open Access Plus Medical Benefits 2000 Plan, p.18, effective January 1, 2019).

16) Similar to the situation described above, CIGNA determined an allowed amount pursuant to the SPD plan terms above at 60% of billed rates and sent the claim with the allowed amount to Data iSight  who then repriced the reimbursement

below the amount required to be paid by the CBRE in violation of the express provisions of the CBRE SPD.

17) The Community Counseling Service Co, LLC, Open Access Plus Premier Plan dated August 1, 2018, provides as follows for the reimbursement of out-of-network claims:

**Chiropractic Services.**
30 visits per calendar year; you pay 20% and plan pays 80% for out of network providers

(The Community Counseling Service Co, LLC, Open Access Plus Premier Plan, p. 4, dated August 1, 2018).

18) Similar to the situation described above, CIGNA determined an allowed amount pursuant to the SPD plan terms above at 80% of billed rates and sent the claim with the allowed amount to Data iSight  who then repriced the reimbursement below the amount required to be paid by the Community Counseling Plan in violation of the express provisions of the Community Counseling SPD.

19) The Palm Restaurant Employee Benefit Trust OAP Choice Plan, effective September 1, 2019, provides as follows for the reimbursement of out-of-network claims:

**Office Visits & Office Services.**
Specialist : 60% for out of network providers

(Palm Restaurant Employee Benefit Trust OAP Choice Plan, p.13, effective September 1, 2019).

20) Similar to the situation described above, CIGNA determined an allowed amount pursuant to the SPD plan terms above at 60% of billed rates and sent the claim

with the allowed amount to Data iSight who then repriced the reimbursement below the amount required to be paid by the Palm Restaurant Plan in violation of the express provisions of the Palm Restaurant SPD.

21) With regard to Aetna's use of Data iSight, an ANJC member with a valid assignment of benefit from his patient, an Aetna subscriber, submitted claims to Aetna for chiropractic services for dates of service 2/20/2019 in the amount of $55.00. Aetna denied reimbursement completely and issued no out of network payment with an explanation: "The plan payment for certain out of network services is determined using the Data iSight database. For additional information, contact Data iSight at . . . . (Navisink Chiropractic Center claim submission for patient JW dated 2/26/2019).

22) Accordingly, unlike CIGNA which detailed the correct amount to be paid under the SPD which was then improperly reduced by Data iSight, Aetna completely denied clean claims for chiropractic services paying $0.00 and forcing the provider to contact Data iSight to obtain payment at the rates they dictate well below the rates set forth in the applicable SPD.

23) Aetna further issued Explanation of Benefit forms to ANJC members who billed for chiropractic services provided to Aetna subscribers reducing payment below the SPD mandated amounts utilizing the Data iSight database. The Reduction of charges of $55.00 to $29.81 for date of service 10/21/19 contained the following explanation from Aetna:

14

> You are an out-of-network provider and do not have a contracted rate from Aetna.  The member's plan provides benefits for covered out-of-network services at what we find to be a recognized charge.  The recognized charge determination on the claim resulted in a reduction in payment and was calculated using the Data iSight database.  In the event you choose to balance bill the member for the amount reflected in the "not payable column" . . . the member may be eligible for patient advocacy services through Data iSight to resolve the outstanding balance.

> (Navisink Chiropractic Center claim submission for patient JW dated 10/21/2019).

24) In addition, for patient PR, Edward Stivers, DC, submitted a bill for $335.00 for date of service 12/4/19 which was similarly reduced to $123.17 with the same Explanation from Aetna:

> You are an out-of-network provider and do not have a contracted rate from Aetna.  The member's plan provides benefits for covered out-of-network services at what we find to be a recognized charge.  The recognized charge determination on the claim resulted in a reduction in payment and was calculated using the Data iSight database.  In the event you choose to balance bill the member for the amount reflected in the "not payable column" . . . the member may be eligible for patient advocacy services through Data iSight to resolve the outstanding balance.

25) Thus, Aetna improperly reduced plan reimbursement and indicated in its explanation of benefits form sent to the doctor and the patient that if the doctor attempted to balance bill for the amount Aetna improperly reduced, the patient can contact Data iSight who will attempt to prevent the doctor from collecting a balance due, in direct violation of a statutory duty to collect coinsurance and deductibles.

26) There are numerous additional examples of the improper repricing of Aetna claims too voluminous to detail in this complaint at length.

27) Scordilis, Lowerigkeit, and other ANJC members have attempted to appeal the improper repricing with the defendants to no avail.

28) Specifically, on January 13, 2020, ANJC Member Michael Guadagnino, DC, appealed to CIGNA to obtain payment for claims that Data iSight interposed its repricing system upon resulting in months of delay in payment.

29) Specifically, Dr. Guadagnino wrote in his appeal to CIGNA the following:

"My office is done playing ping pong between Data iSight and CIGNA which includes a plethora of phone calls and letters, as to who is responsible for the false statement made on the EOB and paying based on that false statement.  I never accept any discount either by CIGNA or Data iSight.  Each time we call or write to one of the two companies to correct this false information, they direct us towards the other. . . .

(Guadagnino appeal letter dated January 13, 2020, to CIGNA).

30) Dr. Guadagnino was again forced to write to CIGNA on another unpaid claim due to Data iSight.  In his letter, Dr. Guadagnino wrote:

I am not sure why, other than to play games with me that you are not responding to any of my letters in a professional manner.  You continue to ignore everything I write and send me stock answers.  The bottom line I never made any agreement with Data iSight or anyone else, what you  sent the your subscriber/my patient in written documentation is completely wrong, and will stand up in a court of law if that is where this must end . . . .

(Guadagnino appeal letter dated January 13, 2020, to CIGNA).

31) In addition, Scordilis, as assignee of the subscriber plan benefits of his patients, requested on multiple occasions copies of the SPDs of the plan which were not provided within the statutorily mandated 30 days.

32) Specifically, on 7/29/19, Scordilis requested SPD for patient FV under the Harris Corporation Plan administered by CIGNA.  The request included the subscriber's written assignment of benefits which expressly authorized the doctor to request plan documentation under ERISA.  To date, CIGNA has not provided the requested SPD in violation of the 30 day mandate of ERISA and is liable for a $100 statutory penalty per day for not providing the requested plan documents.

33) Similarly, on 7/29/19, Scordilis requested SPD for patient ET under the CBRE Services Plan administered by CIGNA.  The request included the subscriber's written assignment of benefits which expressly authorized the doctor to request plan documentation under ERISA.  To date, CIGNA has not provided the requested SPD in violation of the 30 day mandate of ERISA and is liable for a $100 statutory penalty per day for not providing the requested plan documents.

34) These examples are non-exhaustive representative examples to put defendant on notice of the improper actions complained of by plaintiffs.

35) The blanket policy and practice implemented by Defendants which globally reduces all claim reimbursements to out-of-network providers, including plaintiffs, to reimbursement rates below what is required to be paid by the Plan EOC/SPD provisions violates: i) ERISA's mandate of providing a full and fair review of adverse determinations of claim submissions; and ii)the ERISA fiduciary duty required by Defendants towards plaintiffs pursuant to 29 U.S.C. §502(a)(2)&(3), 29 U.S.C. §1104(a)(1)(B)&(D); and iii) 29 U.S.C. §1024(b)(4) which

mandates Plan Administrators provide Plan documents within thirty days of written request for same.

36) The Plaintiffs seek a declaratory judgment from the Court in this action on the issue as to whether defendant's repricing and reduction of out-of-network reimbursement to plaintiffs and similarly situated doctors as stated above violates ERISA standards discussed above under federal question jurisdiction.

37) The Plaintiffs also submit that the blanket repricing of all out-of-network claims in this manner constitutes arbitrary and capricious claim practices warranting a declaration that such actions must cease.

38) The Plaintiffs also submit that they are entitled to statutory penalties for not being provided plan documentation within thirty days of written request in violation of ERISA.

## COUNT ONE – ERISA VIOLATIONS

1. Plaintiffs repeat and re-allege the allegations previously set forth in this Verified Complaint as though the same were set forth at length herein.

2. Defendants have made adverse benefit determinations with regard to the policies by repricing the reimbursement of plaintiffs and similarly situated providers below the rates required by the SPD / EOC plan documents.

3. By implementing this improper repricing policy in violation of the plan SPD provisions, there is *no* review being performed by Defendants, let alone a full and

fair review, when they globally reprice the claims of plaintiffs in violation of federal ERISA law.

4. With regard to these adverse benefit determinations, Defendants have violated their legal obligations under ERISA and federal common law due to their failure to comply ERISA regulations and requirements in providing a full and fair review of all claims submitted under health insurance plans of Defendants.

5. ERISA authorizes plan participants or beneficiaries to sue for benefits due and equitable relief pursuant to 29 U.S.C. § 1132(a)(1)(B), (a)(3).

6. During the relevant time period, Scordilis and Loewrigkreit, as assignees of the ERISA benefits payable to their patients, were entitled to receive a "full and fair review" of all claims and are entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements as valid assignees of the plan benefits.

7. Although Defendants were obligated to do so, they failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for the Individual Plaintiffs, by making claim payments that are inconsistent with or unauthorized by the terms of Members' EOCs and SPDs as well as in violation of the federal ERISA laws.

8. During the relevant time period, Scordilis, Loewrigkreit, other ANJC members and their patients exhausted all appeals and/or appeals have been deemed futile and have been harmed by Defendants' failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133. The ANJC and the individual plaintiffs are also

entitled to injunctive and declaratory relief to remedy Defendants' continuing violation of these provisions.

### COUNT TWO: VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE

9. The allegations contained in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

10. During the relevant time period, Defendants acted as a "fiduciary" to the members of its plans and to their providers, as such term is understood under 29 U.S.C. § 1002(21)(A).

11. As an ERISA fiduciary, Defendants owed, and owes, their members in ERISA plans, and their providers a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of a like enterprise.  Further, ERISA fiduciaries must act in accordance with the documents and instruments governing the group plan.  29 U.S.C. §502(A)(2)&(3); 29 U.S.C. §1104(a)(1)(B)&(D).   In failing to act prudently, and in failing to act in accordance with federal ERISA laws and instruments governing the plan, Defendants violated their fiduciary duty of care by engaging in arbitrary and capricious adverse claim determinations by improperly repricing out of network plan benefits in contradiction to the plan documents.

12. As an ERISA fiduciary, Defendants owed and owes their members and their providers a duty of loyalty, defined as an obligation to make decisions in the interest

of its members, and to avoid self-dealing or financial arrangements that benefit it at the expense of its members under 29 U.S.C. §1106.  Defendants cannot make benefit determinations for the purpose of saving money at the expense of its members.

13. Defendants violated their fiduciary duties of loyalty and due care by, *inter alia*, repricing claims below the rates required by the plans as detailed herein that were unauthorized by federal ERISA laws and/or the EOCs and SPDs and which benefited Defendants at the expense of their subscribers.

14. The Individual Plaintiffs are entitled to assert a claim for relief for Defendants' violation of their fiduciary duties under 29 U.S.C. § 1132(a)(3), including injunctive and declaratory relief.  Plaintiff ANJC seeks similar relief, in a representational capacity on behalf of its members.

## COUNT THREE: STATUTORY PENALTIES

15. The allegations contained in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

16. ERISA defines a plan "beneficiary" as "a person designated by a participant … who is or may become entitled to a benefit [under an employee benefit plan]." 29 U.S.C. § 1002(8). An assignee designated to receive benefits is considered a beneficiary and can sue for unpaid benefits under section 1132(a)(1)(B). See Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700 (7th Cir. 1991).

17. Plaintiffs and their patients have requested SPD plan documents from the defendants to determine what out-of-network payment fee schedules and/or rates are required by the Plans.

18. Specifically, Plaintiffs' requested from Defendants, in writing, the following information concerning the Plan provisions:

> Finally, we hereby request on behalf of our patients a copy of the Summary Plan Description ("SPD") required to be maintained by the Plan and provided upon request to the Plan Beneficiary under ERISA as well as any and all information and documentation utilized by any third party entities or repricers, including but not limited to Data iSight, concerning the methodology used to reprice, process, reduce or otherwise alter the allowed amounts to the provider or offers made to the provider. Please note, an enrollee/beneficiary may file suit against a Plan Administrator who fails to comply with the enrollee's/beneficiary's request for a copy of the latest SPD. Indeed, Section 502(a)(1)(A) of ERISA indicates the Plan Administrator has thirty (30) days to provide the SPD to the enrollee/beneficiary. The Plan Administrator may be held liable for up to $110.00 per day for each day it fails to provide the SPD to the enrollee/beneficiary.

19. Defendants have not provided any of the requested information within thirty days of request and are, therefore, liable to plaintiffs for up to $110 per day for not furnishing plan documents or "instruments under which the plan is established or operated" within 30 days of his or her request. 29 U.S.C. §§ 1024(b)(4).

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

a. Declaring that Defendants have violated the terms of the federal ERISA laws and Plan EOCs and SPDs based upon their unilateral repricing of claim reimbursements below what is required by the plan documents which constitutes failure to provide a full and fair review of claims under

29 U.S.C. § 1133 and 29 U.S.C. § 1132(a)(1)(B), (a)(3) as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein;

b. Declaring that Defendants have violated their fiduciary duties including the duties of loyalty and care to Plaintiffs, and awarding appropriate relief, including declaratory and injunctive relief to Plaintiffs;

c. For statutory penalties of $110 per day for each day beyond thirty days that defendants have not produced requested plan documents in violation of 29 U.S.C. §§ 1024(b)(4);

d. Awarding the plaintiffs disbursements and expenses of this action, including reasonable counsel fees, in amounts to be determined by the Court and other appropriate relief; and

e. Granting such other and further relief as is just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,
LAW OFFICE OF JEFFREY RANDOLPH, L.L.C.
Attorney for Plaintiffs

/s/ *Jeffrey Randolph*

By: _____
Jeffrey B. Randolph, Esq. (JBR 5453)

Dated: September 16, 2020