## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCORDILIS CHIROPRACTIC, PA, ERIC LOEWRIGKEIT, DC, NAVESINK CHIROPRACTIC CENTER, & EDWARD STIVERS, DC,<br><br>Plaintiffs,<br><br>v.<br><br>DATA ISIGHT, INC.; MULTIPLAN, INC.; CONNECTICUT GENERAL LIFE INSURANCE CO.; CIGNA INSURANCE CO.; AETNA HEALTH INC.; AETNA HEALTH INSURANCE CO.,<br><br>Defendants, | Civil Action No. 2:19-CV-21973-JMV-JBC<br><br><br><br><br><br>**3rd AMENDED COMPLAINT & JURY DEMAND (CORRECTED)** |

Plaintiffs, Scordilis Chiropractic, PA, by its principal and authorized representative Peter Scordilis, DC, ("Scordilis") with a principal place of business of 925 Allwood Road, Clifton, New Jersey, and Eric Loewrigkeit, DC, ("Loewrigkeit") with a principal place of business of 17 Woodport Road, Sparta, New Jersey, and Navesink Chiropractic Center, with a principal place of business of 316 Broad Street, Red Bank, New Jersey ("Navesink"), and Edward Stivers, DC, with a principal place of business of 3 South Locust Avenue, Edison, New Jersey ("Stivers") (collectively, "Plaintiffs"), on behalf of themselves, by way of a Verified Complaint against Defendants, hereby allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based upon, inter alia, the investigation made by and through their attorneys, as follows:

1

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

1. Plaintiff, Scordilis Chiropractic, PA, is a New Jersey Professional Association owned and operated by Peter Scordilis, DC, a chiropractic physician licensed to practice in the State of New Jersey which does not participate with any of the Defendants as a participating practice and has a primary office located at 925 Allwood Road, Clifton, New Jersey.  As a Professional Association formed and operating in New Jersey through its licensed chiropractic physicians, Scordilis Chiropractic accepts assignment of benefits from their patients that are CIGNA and Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law.  Scordilis, in fact, possesses written assignment of benefit forms from the patients referenced in this complaint and others that are subscribers to the Aetna and CIGNA plans at issue which expressly assign the right to pursue the present lawsuit as an assignee of such patients.  As such, Scordilis Chiropractic, PA, has standing to pursue the claims herein based upon assignment of benefit clauses wherein their patients assign their rights under both Aetna and CIGNA health plans to Scordilis Chiropractic, PA.

2. Plaintiff, Dr. Eric Lowerigkeit, DC, is a chiropractic physician licensed to practice in the State of New Jersey who does not participate with Aetna or CIGNA as a participating chiropractor and has a primary office located at 17 Woodport Road, Sparta, New Jersey.  As a licensed chiropractic physician practicing in New

Jersey, Lowerigkeit accepts assignment of benefits from his patients that are CIGNA and Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law. Dr. Lowerigkeit, in fact, possesses written assignment of benefit forms from the patients referenced in this complaint and others that are subscribers to the Aetna and CIGNA plans at issue which expressly assign the right to pursue the present lawsuit as an assignee of such patients.  As such, Dr. Lowerigkeit has standing to pursue the claims herein based upon assignment of benefit clauses wherein their patients assign their rights under both Aetna and CIGNA health plans to Dr. Lowerigkeit.

3.  Plaintiff, Navesink Chiropractic Center, is a New Jersey Professional Corporation owned and operated by Michael Goione,  DC, a chiropractic physician licensed to practice in the State of New Jersey which does not participate with any of the Defendants as a participating practice and has a primary office located at 316 Broad Street, Red Bank, New Jersey.  As a Professional Corporation formed and operating in New Jersey through its licensed chiropractic physicians, Navesink accepts assignment of benefits from their patients that are CIGNA and Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law.  Navesink, in fact, possesses written assignment of benefit forms from the patients referenced in this complaint and others that are subscribers to the Aetna and CIGNA plans at issue which expressly assign the

right to pursue the present lawsuit as an assignee of such patients. As such, Navesink has standing to pursue the claims herein based upon assignment of benefit clauses wherein their patients assign their rights under both Aetna and CIGNA health plans to Navesink Chiropractic Center.

4.  Plaintiff, Dr. Edward Stivers, DC, is a chiropractic physician licensed to practice in the State of New Jersey who does not participate with CIGNA or Aetna as a participating chiropractor and has a primary office located at 3 South Locust Avenue, Edison, New Jersey. As a licensed chiropractic physician practicing in New Jersey, Stivers accepts assignment of benefits from his patients that are CIGNA and Aetna subscribers and submit claims to the carriers for reimbursement that have been repriced and payment denied or delayed as detailed in this complaint in violation of federal law. Stivers, in fact, possesses written assignment of benefit forms from the patients referenced in this complaint and others that are subscribers to the Aetna and CIGNA plans at issue which expressly assign the right to pursue the present lawsuit as an assignee of such patients. As such, Dr. Stivers has standing to pursue the claims herein based upon assignment of benefit clauses wherein their patients assign their rights under both Aetna and CIGNA health plans to Dr. Stivers.

5.  Defendant Data iSight, Inc., is a is a foreign corporation authorized to perform the business of insurance and/or third-party administration of insurance in New Jersey and is performing the business of insurance and/or third-party administration of insurance in New Jersey with a registered address of 222 West

Las Colinas Boulevard, Suite 1500, Irving, Texas 75039.  Based upon agreements with Aetna and CIGNA, Data Isight is provided discretionary authority as Plan administrator and/or manager to reduce, reprice, delay, deny and otherwise issue adverse benefit determinations based upon delegated authority given to it by Aetna and CIGNA.   Aetna and CIGNA have delegated authority to Data iSight / Multiplan to make unilateral determinations to reduce and/or reprice out of network chiropractic claims, including those of plaintiffs, which results in discretionary authority to manage the benefits paid under the Plans and discretionary authority to administer the benefits paid under the Plans as an ERISA fiduciary under Section 502(a).   As such, Data Isight exercises discretionary authority and/or discretionary responsibility in the administration of CIGNA and Aetna health plans as it relates to out-of-network healthcare claims, specifically those of Scordilis, Lowerigkeit, Navesink and Stivers.

6. Defendant Multiplan, Inc., is a is a foreign corporation authorized to perform the business of insurance and/or third party administration of insurance in New Jersey and is performing the business of insurance and/or third-party administration of insurance in New Jersey and is a parent, sister or related entity with Defendant Data iSight, with a registered address of115 5th Avenue, New York, NY  10003.  Multiplan is a licensed / certified organized delivery system with the New Jersey Department of Banking and Insurance. Based upon agreements with Aetna and CIGNA, Data Isight is provided discretionary authority to reduce, reprice, delay, deny and otherwise issue adverse benefit

5

determinations based upon delegated authority given to it by Aetna and CIGNA. Aetna and CIGNA have delegated authority to Multiplan to make unilateral determinations to reduce and/or reprice out of network chiropractic claims, including those of plaintiffs, which results in discretionary authority to manage the benefits paid under the Plans and discretionary authority to administer the benefits paid under the Plans as an ERISA fiduciary under Section 502(a). As such, Multiplan exercises discretionary authority and/or discretionary responsibility in the administration of CIGNA and Aetna health plans as it relates to out-of-network healthcare claims, specifically those of Scordilis, Lowerigkeit, Navesink and Stivers.

7. Defendant Connecticut General Life Insurance Company, is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 908 Cottage Grove Road, Hartford, CT 06152.

8. Defendant CIGNA Insurance Co., is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 908 Cottage Grove Road, Hartford, CT 06152.

9. Defendant Aetna Health, Inc., is a New Jersey Corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 980 Jolly Road, U11S, Blue Bell, Pennsylvania.

10. Defendant Aetna Health Insurance Company, is a foreign corporation authorized to perform the business of insurance in New Jersey and is performing the business of insurance in New Jersey with a registered address of 980 Jolly Road, U11S, Blue Bell, Pennsylvania.

11. Defendants offer, insure, underwrite and/or administer commercial health benefits, including administration of self-funded health plans governed by the federal ERISA statutes, including those of patients for whom Scordilis and Lowerigkeit and other ANJC members have provided health care services, as detailed herein.   Aetna and CIGNA delegate discretionary authority to defendants Data iSight and Multiplan to unilaterally reduce, reprice, delay, deny and otherwise issue adverse benefit determinations based upon delegated authority given to it by Aetna and CIGNA without prior authorization or approval by Aetna or CIGNA of such plan administration decisions.   As such, Data Isight and Multiplan exercise unilateral discretionary authority and/or discretionary responsibility in the administration and/or management of CIGNA and Aetna health plans as a fiduciary of such plans as it relates to out-of-network healthcare claims, specifically those of Scordilis, Lowerigkeit, Navesink and Stivers.

12. Due to the manner in which they function, all of the Defendants are  ERISA fiduciaries and, as such, they must comply with fiduciary standards.  In the Complaint, "Aetna" and "CIGNA" refers to all named Defendants and all predecessors, successors and subsidiaries to which these allegations pertain.

13. Together, defendants have formed an enterprise that furnishes a vehicle to deny proper payment for the out of network chiropractic services that the Plaintiffs provided to CIGNA and Aetna's insureds.

14. Defendants have also conspired to reduce or reprice out of network chiropractic services performed by plaintiffs on CIGNA and Aetna insureds.

15. Upon information and belief, CIGNA and Aetna pays Data iSight / Multiplan as much as 7-9% or more of the "margin" between the price set by the relevant plans for a claim and the amount Data iSight / Multiplan can underpay the claim by.

## JURISDICTION & VENUE

1. Defendants' actions in administering and/or managing employer-sponsored health care plans, including determining reimbursements for Providers who supply health care services to Aetna and CIGNA insureds pursuant to the terms and conditions of the health care plans, are governed by ERISA, 29 U.S.C. § 1001, 502(a)(2)&(3), *et seq.* Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction).

2. Venue is appropriate in this District for Plaintiffs' claims under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because Plaintiffs reside and operate here, the services, claims, and policies that are the subject of this lawsuit occurred here, and Defendants are authorized to do business here, either directly or through wholly owned and

controlled subsidiaries and are doing business here.

### OVERVIEW OF PLAINTIFFS' LEGAL CLAIMS

1. As the companies that issue, insure, design, manage, and/or administer the employee benefit plans through which a number of Plaintiffs' patients received their insurance, Defendants are subject to ERISA, and its governing regulations. Further, due to the role Defendants played in administering and/or managing the health care plans which insured the patients of Plaintiffs that are at issue in this matter, including making unilateral benefit decisions, calculating reimbursement rates, and deciding appeals without any requirement of authorization or approval by Aetna or CIGNA, Defendants have assumed the role as fiduciaries under ERISA.    Defendants Aetna and CIGNA delegate discretionary authority to defendants Data iSight and Multiplan to act as their agents in administering plan benefits and are, thus, ERISA fiduciaries.

2. Under ERISA, Defendants are required, among other things, to comply with the terms and conditions of their health care plans and the plans they administer and federal laws and to accord their subscribers and their providers an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements.

3. The federal common law of trusts, applicable to ERISA fiduciaries, further requires that fiduciaries deal honestly with members and their assignees and adhere to certain specific fiduciary standards in their dealings.

4. In offering and administering and managing their health care plans, Defendants assume the role of "Plan Administrator," as that term is defined under ERISA, in that they unilaterally interpret and apply the plan terms,  calculate reimbursement rates lower than those required by Plan documents, issue Explanation of Benefits, process appeals, and provide for payment to subscribers and/or their providers.

5. As the Plan Administrators, Defendants also assume various obligations specified under ERISA.   These obligations include providing their subscribers with a Summary Plan Description ("SPD"), a document designed to describe in layperson's language the material terms, conditions and limitations of the health care plan.  The full details of the plan, which are summarized in the SPD, are contained in the Evidence of Coverage ("EOC") that governs each member's health care plan.

6. Defendants are obligated under ERISA to make their coverage determinations in a manner consistent with the disclosures contained in the SPD and federal law.  If the employer, rather than Defendants, are deemed to be the Plan Administrator, Defendants remain responsible for ensuring that the SPD complies with the law under their duties as co-fiduciaries as provided in ERISA, 29 U.S.C. § 1105, even if the employer prepares or disseminates the SPD.

7. Prior to providing chiropractic care to their patients that are subscribers of Defendants' health plans, Scordilis, Lowerigkeit, Navesink and Stivers, obtain written assignment of benefits from their patients.  Scordilis, Lowerigkeit, Navesink and Stivers have actual written assignment of benefit forms from Aetna and CIGNA patients assigning their rights under the plans to the respective doctors.

10

8.  These assignment of benefit forms executed by each patient, for example, assigns to the plaintiffs the following rights:

> The undersigned also designates the Provider to the fullest extent permissible under the Employee Retirement Income Security Act of 1974 ("ERISA") as provided in 29 CFR 2560-503-1(b)(4) and under any applicable state and federal law as their representative / attorney-in-fact to pursue claims and appeals and/or litigation on my behalf and exercise all rights connected with my health care benefit plan or insurance policy and/or administrators, contractors, vendors or other third parties contracted with my health care benefit plan including but not limited to initial claims determinations, appeals of any benefit determinations, obtaining records and related plan documents, obtaining documents from administrators, contractors, vendors or other third parties contracted with my health care benefit plan, claiming on my behalf medical or other health care benefits, pursuing insurance or plan reimbursement and to pursue any other applicable remedies as may be necessary and with regards to my health benefit plan or insurance policy along with any incidental powers and duties to effectuate same. This is to be construed as the broadest possible designation and assignment of benefits as permitted by law.

9.  Prior to providing services, plaintiffs verified with defendants that the patients had out-of-network benefits and that the services provided were covered services, and then proceeded to provide services in reliance upon such representations.

### The Repricing Issue

10. Data iSight and/or Multiplan is a third-party vendor that is hired by insurance companies, including Aetna and CIGNA, to unilaterally "reprice" (reduce) insurance reimbursements to various doctors and pay such reduced claims, specifically Scordilis, Lowerigkeit, Navesink and Stivers, for health care services performed in New Jersey by New Jersey doctors on New Jersey patients.  Such discretionary authority to make unilateral decisions on repricing of claims, issuing EOBs, and issuing payments for repriced claims, make Data iSight and Multiplan ERISA fiduciaries with direct control over administration and management of the ERISA Plans.

11

11. Data iSight and Multiplan have been making unsolicited contact with Scordilis, Lowerigkeit, Navesink and Stivers and "repricing" (reducing) what they should legally be paid under the patients' health plan to a lower amount which is in direct contradiction with the health plan SPD and EOC provisions. These discretionary actions delegated to Data iSight and Multiplan by Aetna and CIGNA constitute adverse benefit determinations as contemplated by ERISA.

12. When the doctor attempts to appeal or otherwise dispute the repricing, defendants Data iSight and/or Multiplan delay claim payments for up to six months or more which is in violation of the New Jersey Prompt Pay Law as well as federal ERISA law.

13. Even worse, an Explanation of Benefits ("EOB") form is issued to the patient by defendants showing the repriced amount as the allowed amount which misleadingly informs the patient that that is the maximum the doctor is entitled to and that the doctor cannot attempt to collect from them any amount that exceeds the repriced amount.

14. This violates both state and federal law which imposes a statutory duty upon doctors to collect coinsurance payments from patients, including but not limited to the *Out-of-Network Protection, Transparency, Cost Containment and Accountability Act*, N.J.S.A. 26:2SS-1 *et. seq.*

15. The specific plans at issue with identification to them are as follows:

    a. 2014 MassMutual Plan administered by CIGNA, Group ID#s: 3191624, 3337001,2465054, 600624931, 2461894, 00614909, 00624712, for which

defendants are violating Out of Network Reimbursement Section on pg. 15 of the Plan SPD related to Scordilis.

b. Versa Products Company 2019 CIGNA OAP HDHP Plan, for which defendants are violating the Out of Network Specialist Reimbursement Section on pg. 16-17 of the Plan SPD related to Scordilis.

c. CBRE Open Access Plus Medical Benefits 2000 Plan effective January 2019 administered by CIGNA effective January 1, 2019, for which defendants are violating Section Chiropractic / Specialist Out of Network Reimbursement on pg. 18 of the Plan SPD related to Scordilis.

d. Community Counseling Service Co, LLC, Open Access Plus Premier Plan, effective August 2018, administered by CIGNA, for which defendants are violating Section on Out of Network Reimbursement on p.4 of the Plan SPD related to Scordilis.

e. Palm Restaurant Employee Benefit Trust OAP Choice Plan, administered by CIGNA, effective September 1, 2019, Group #s: 00358227 for which defendants are violating Section Plan Features for Out of Network reimbursement on p.13 & 20 of the Plan SPD related to Scordilis.

f. Bayer Corporation Plan administered by Aetna, for which defendants are violating Group plan #0800103-22-002 for claims submitted by Navesink Chiropractic.

g. L3 Technologies, Inc. Plan administered by Aetna, for which defendants are violating Group plan #0868458-14-026, for claims submitted by Stivers.

16. A specific example of the improper actions of Defendant CIGNA is as follows. Patient "SG" was a subscriber to a self-funded plan of the MassMutual Financial Group that was administered by CIGNA.  The Plan SPD requires reimbursement of out-of-network chiropractic claims at 70% of the maximum allowed amount after deductible satisfaction.  The Specific Plan provision violated in this instance is the following clause on page 15 of the October 2014 MassMutual SPD:

**Maximum Reimbursable Charge**
For out-of-network charges, the Plan pays benefits based on the Maximum Reimbursable Charge.  Maximum Reimbursable Charge is determined based on the lesser of:
- The provider's normal charge for a similar service or supply; or
- A percentage of a fee schedule that Cigna developed based on a methodology similar to a methodology used by Medicare to determine the allowable fee for similar services within the geographic area.

(MassMutual Summary Plan Description, p. 15 (Oct. 2014).

17) Scordilis submitted claims for chiropractic services performed on 5/31/19 to CIGNA for a patient insured under the MassMutual plan in the amount of $230.00 which should have been reimbursed under the plan terms at $161.00 as the proper out-of-network reimbursement pursuant to the MassMutual SPD.

18) Data iSight unilaterally imposed *an additional $87.57 reduction below what the MassMutual SPD required to be paid* to Scordilis and paid only $99.71 on the claim. The EOB indicates the patient saved 81% of the total amount billed due to the repricing by Data iSight.  The EOB misleadingly indicates that the doctor can only collect $42.72 in coinsurance from the patient and not the $87.57 Data iSight reduction, preventing the doctor from complying with his statutory mandate to

14

collect full coinsurance obligations from the patient.   Thus, defendants underpaid the claim in the amount of $87.57 in violation of the Plan SPD.

19) Scordilis appealed the improper payment on 7/29/19 and all levels of appeal were thereafter denied.  The SPD of the MassMutual Plan expressly provides the subscriber "the right to bring a civil action under ERISA Section 502(a) if you are not satisfied with the appeal process."

20) Defendants have also violated the SPDs of multiple additional plans issued by Defendants as follows.

21) Specifically, the Versa Products Company CIGNA OAP HDHP Plan effective January 1, 2019, provides as follows for the reimbursement of out-of-network claims:

**Maximum Reimbursable Charge**
Maximum reimbursable charge is determined based upon the lesser of the provider's normal charge for a similar service or supply; or a percentage of a fee schedule that CIGNA has developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market.   In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:
- The providers normal charge for a similar service or supply; or
- The 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as complied by a database selected by CIGNA.

(Versa Products Company CIGNA OAP HDHP Plan, p.16-17, effective January 1, 2019).

22) Similar to the situation described above, CIGNA's SPD plan terms above required payment at 80th percentile of the usual and customary rate and sent the claim with the allowed amount to Data iSight / Multiplan who then repriced the

reimbursement below the amount required to be paid by the Versa Products SPD

in violation of the express provisions of the Versa Products SPD.

23) The Bluerock Real Estate Holdings, LLC, HDHP CIGNA OAP Plan, effective

January 1, 2019, provides as follows for the reimbursement of out-of-network

claims:

**Maximum Reimbursable Charge**
Maximum reimbursable charge is determined based upon the lesser of the
provider's normal charge for a similar service or supply; or a percentage of a fee
schedule that CIGNA has developed that is based upon a methodology similar to
a methodology utilized by Medicare to determine the allowable fee for similar
services within the geographic market.   In some cases, a Medicare based
schedule will not be used and the Maximum Reimbursable Charge for covered
services is determined based on the lesser of:
-   The providers normal charge for a similar service or supply; or
-   The 80th percentile of charges made by providers of such service or supply in
    the geographic area where it is received as complied by a database selected
    by CIGNA.

(Blue Rock Real Estate Holdings, LLC, CIGNA OAP HDHP Plan, p.18-22,
effective January 1, 2019).

24) Data iSight / Multiplan unilaterally imposed *an additional $___ reduction below*

*what the Plan SPD required to be paid* to Scordilis and paid only $_____ on the

claim.  The EOB misleadingly indicates that the doctor can only collect $_____ in

coinsurance from the patient and not the $____ Data iSight reduction, preventing

the doctor from complying with his statutory mandate to collect full coinsurance

obligations from the patient.   Thus, defendants underpaid the claim in the

amount of $_____ in violation of the Plan SPD.

25) The CBRE Open Access Plus Medical Benefits 2000 Plan effective January 1, 2019,

provides as follows for the reimbursement of out-of-network claims:

16

**Outpatient Short Term Rehabilitative Therapy and Chiropractic Services.**
60% after plan deductible for out of network providers.

(CBRE Open Access Plus Medical Benefits 2000 Plan, p.18, effective January 1, 2019).

26) Data iSight / Multiplan unilaterally imposed *an additional $___ reduction below what the Plan SPD required to be paid* to Scordilis and paid only $_____ on the claim. The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient. Thus, defendants underpaid the claim in the amount of $_____ in violation of the Plan SPD.

27) The Community Counseling Service Co, LLC, Open Access Plus Premier Plan dated August 1, 2018, provides as follows for the reimbursement of out-of-network claims:

**Chiropractic Services.**
30 visits per calendar year; you pay 20% and plan pays 80% for out of network providers

(The Community Counseling Service Co, LLC, Open Access Plus Premier Plan, p. 4, dated August 1, 2018).

28) Data iSight / Multiplan unilaterally imposed *an additional $___ reduction below what the Plan SPD required to be paid* to Scordilis and paid only $_____ on the claim. The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance

17

obligations from the patient.   Thus, defendants underpaid the claim in the amount of $_____ in violation of the Plan SPD.

29) The Palm Restaurant Employee Benefit Trust OAP Choice Plan, effective September 1, 2019, provides as follows for the reimbursement of out-of-network claims:

**Office Visits & Office Services.**
Specialist : 60% for out of network providers

(Palm Restaurant Employee Benefit Trust OAP Choice Plan, p.13, effective September 1, 2019).

30) Data iSight / Multiplan unilaterally imposed *an additional $___ reduction below what the Plan SPD required to be paid* to Scordilis and paid only $_____ on the claim.   The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient.   Thus, defendants underpaid the claim in the amount of $_____ in violation of the Plan SPD.

31) With regard to Aetna's use of Data iSight, Navesink Chiropractic Center, with a valid assignment of benefit from his patient, an Aetna subscriber, submitted claims to Aetna for chiropractic services for dates of service 2/20/2019 in the amount of $55.00.   Aetna denied reimbursement completely, referencing the delegated discretionary authority to Data iSight / Multiplan and issued no out of network payment with an explanation: "The plan payment for certain out of network services is determined using the Data iSight database.   For additional

information, contact Data iSight at . . . .  (Navisink Chiropractic Center claim submission for patient JW dated 2/26/2019).

32)  Data iSight / Multiplan unilaterally imposed *a 100% reduction below what the Plan SPD required to be paid* to Navesink.  The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient.   Thus, defendants underpaid the claim in the amount of $55.00 in violation of the Plan SPD.

33) Defendants further issued Explanation of Benefit forms to Navesink Chiropractic Center who billed for chiropractic services provided to Aetna subscribers wherein Data iSight / Multiplan reduced payment below the SPD mandated amounts utilizing the Data iSight database.  The Reduction of charges of $55.00 to $29.81 for date of service 10/21/19 contained the following explanation of benefits:

You are an out-of-network provider and do not have a contracted rate from Aetna.  The member's plan provides benefits for covered out-of-network services at what we find to be a recognized charge.  The recognized charge determination on the claim resulted in a reduction in payment and was calculated using the Data iSight database.  In the event you choose to balance bill the member for the amount reflected in the "not payable column" . . . the member may be eligible for patient advocacy services through Data iSight to resolve the outstanding balance.

(Navisink Chiropractic Center claim submission for patient JW dated 10/21/2019).

34) Data iSight / Multiplan unilaterally imposed *a $25.19 reduction below what the Plan SPD required to be paid* to Navesink.  The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient.  Thus, defendants underpaid the claim in the amount of $25.19 in violation of the Plan SPD.

35) In addition, for patient PR, Edward Stivers, DC, submitted a bill for $335.00 for date of service 12/4/19 which was similarly reduced to $123.17 with the same Explanation of Benefits:

You are an out-of-network provider and do not have a contracted rate from Aetna.  The member's plan provides benefits for covered out-of-network services at what we find to be a recognized charge.  The recognized charge determination on the claim resulted in a reduction in payment and was calculated using the Data iSight database.  In the event you choose to balance bill the member for the amount reflected in the "not payable column" . . . the member may be eligible for patient advocacy services through Data iSight to resolve the outstanding balance.

36) Data iSight / Multiplan unilaterally imposed *a $211.83 reduction below what the Plan SPD required to be paid* to Stivers.  The EOB misleadingly indicates that the doctor can only collect $_____ in coinsurance from the patient and not the $____ Data iSight reduction, preventing the doctor from complying with his statutory mandate to collect full coinsurance obligations from the patient.  Thus, defendants underpaid the claim in the amount of $211.83 in violation of the Plan SPD.

37) Thus, defendants improperly reduced plan reimbursement and indicated in its explanation of benefits form sent to the doctor and the patient that if the doctor attempted to balance bill for the amount improperly reduced, the patient can contact Data iSight who will attempt to prevent the doctor from collecting a balance due, in direct violation of a statutory duty to collect coinsurance and deductibles.

38) Scordilis, Lowerigkeit, Navesink, and Stivers have attempted to appeal the improper repricing with the defendants to no avail.

39) These examples are non-exhaustive representative examples to put defendant on notice of the improper actions complained of by plaintiffs and specific reference to plan number, claim number, dates of service, amount that plan required to be paid, and amount improperly repriced to provide detailed notice to defendants of the plans at issue.

40) The blanket policy and practice implemented by Defendants which globally reduces all claim reimbursements to out-of-network providers, including plaintiffs, to reimbursement rates below what is required to be paid by the Plan EOC/SPD provisions violates: i) ERISA's mandate of providing a full and fair review of adverse determinations of claim submissions; and ii)the ERISA fiduciary duty required by Defendants towards plaintiffs pursuant to 29 U.S.C. §502(a)(2)&(3), 29 U.S.C. §1104(a)(1)(B)&(D).

41) The Plaintiffs seek a declaratory judgment from the Court in this action on the issue as to whether defendant's repricing and reduction of out-of-network reimbursement

21

to plaintiffs and similarly situated doctors as stated above violates ERISA standards discussed above under federal question jurisdiction.

42) The Plaintiffs also submit that the blanket repricing of all out-of-network claims in this manner constitutes arbitrary and capricious claim practices warranting a declaration that such actions must cease.

## COUNT ONE – ERISA VIOLATIONS

1.  Plaintiffs repeat and re-allege the allegations previously set forth in this Verified Complaint as though the same were set forth at length herein.

2.  Defendants have made adverse benefit determinations with regard to the policies by repricing the reimbursement of plaintiffs and similarly situated providers below the rates required by the SPD / EOC plan documents.  Defendants Aetna and CIGNA have delegated to defendants Data iSight and Multiplan the discretionary authority to unilaterally reprice, reduce, delay, deny and otherwise manage and administer plan benefits as agents of Aetna and CIGNA acting as delegated ERISA fiduciaries.

3.  By implementing this improper repricing policy in violation of the plan SPD provisions, there is *no* review being performed by Defendants, let alone a full and fair review, when they globally reprice the claims of plaintiffs in violation of federal ERISA law.

4.  With regard to these adverse benefit determinations, Defendants have violated their legal obligations under ERISA and federal common law due to their failure to

comply ERISA regulations and requirements in providing a full and fair review of all claims submitted under health insurance plans of Defendants.

5. ERISA authorizes plan participants or beneficiaries to sue for benefits due and equitable relief pursuant to 29 U.S.C. § 1132(a)(1)(B), (a)(3).

6. During the relevant time period, all plaintiffs, as assignees of the ERISA benefits payable to their patients, were entitled to receive a "full and fair review" of all claims and are entitled to assert a claim under 29 U.S.C. § 1132(a)(3) for failure to comply with these requirements as valid assignees of the plan benefits.

7. Although Defendants were obligated to do so, they failed to provide a "full and fair review" of denied claims pursuant to 29 U.S.C. § 1133 (and the regulations promulgated thereunder) for the Individual Plaintiffs, by making claim payments that are inconsistent with or unauthorized by the terms of Members' EOCs and SPDs as well as in violation of the federal ERISA laws.

8. During the relevant time period, plaintiffs and their patients exhausted all appeals and/or appeals have been deemed futile and have been harmed by Defendants' failure to provide a "full and fair review" of appeals under 29 U.S.C. § 1133. The ANJC and the individual plaintiffs are also entitled to injunctive and declaratory relief to remedy Defendants' continuing violation of these provisions.

### COUNT TWO: VIOLATION OF FIDUCIARY DUTIES OF LOYALTY AND DUE CARE

1. The allegations contained in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.  During the relevant time period, Defendants acted as a "fiduciary" to the members of its plans and to their providers, as such term is understood under 29 U.S.C. § 1002(21)(A).  Defendants Aetna and CIGNA have delegated to defendants Data iSight and Multiplan the unilateral discretionary authority to reprice, reduce, delay, deny and otherwise administer and manage plan benefits as agents of Aetna and CIGNA acting as delegated ERISA fiduciaries.

2. Defendants Data iSight and Multiplan qualify as ERISA fiduciaries as they are provided unilateral authority by Aetna and CIGNA to improperly administer and manage plan payments by repricing out of network claims of plaintiffs in violation of Plan documents.

3. Specifically, the following is detail of how Defendants Data iSight and Multiplan have authority to administer and manage plan payments.

4. The professional claims are for the treatment provided directly by plaintiffs in this case. Professional claims were priced by a specific Data iSight process known internally at MultiPlan as "DiP", internal shorthand for "Data iSight Professional."

5. DiP is a computer program that takes the codes transmitted by plaintiffs and applies a convoluted algorithm to "edit" and recalculate claims payment rates.

6.  Data iSight's first step in processing claims is to apply 'edits.' "Editing" claims modifies the billing codes on Providers' billing forms to reduce the payment rates that the engine generates. Claims editing (or how to underpay the specific claim) is conducted pursuant to input from the financial marketing departments, rather than a medical or clinical department, at MultiPlan. This evidences the administration and management duties under the plan delegated to Data iSight and Multiplan.

7.  The DiP software applies cost adjustments from Medicare in calculating physician payments. DiP adjusts the payment amounts based on "Conversion Factors" (hereinafter "CFs"), "Relative Value Units" (hereinafter "RVUs") and "Geographic Practice Cost Index" (hereinafter GPCI) inputs.

8.  The application of Medicare billing mechanics is incompatible with calculation of "reasonable" or UCR payment rates required by the Plans. Medicare reimbursement rates are not established based on the charges of similar providers in the same geographic area and are not subject to state regulation. This constitutes a breach of fiduciary duty by Data iSight and Multiplan.

9.  To generate a "reasonable" or UCR payment rate, the Data iSight product applies a "conversion factor" or "CF" to the Medicare payment rate. These hidden transformations lie at heart of the underpayment scheme.

10. Data iSight applies an undisclosed statistical analysis to create this unique CF that does not exist in Medicare. Medicare applies a single CF to every single professional service, while Data iSight applies at least 7 CFs depending on type of service. This

departure from Medicare's professional fee schedule further obscures the methodology Data iSight uses to underpay claims.

11. The CF Data iSight applies is derived from a database created by Intercontinental Medical Statistics ("IMS"), a company that purchases data from pharmacies, insurers, and electronic medical record software, anonymizes it, and sells the data back, primarily to drug companies.

12. While MultiPlan represents that the IMS database contains billions of claims, it actually only contains tens of millions of claims. In terms of scale, the FAIR Health dataset contains approximately 100 data points for every one contained within the IMS dataset.

13. IMS is now known as IQVIA. The database is not public, is not vetted, is not comprehensive, and is designed to sell itself.

14. By using the IQVIA data set, the payment rate that is ultimately calculated through Data iSight is even further removed from the usual and customary rate required to be paid by the Plans. IQVIA is not accessible to the general public preventing any independent verification or accountability of its contents and use.

15. MultiPlan chose this database because it knew that the IMS/IQVIA data could be readily manipulated using the Data iSight product, producing the artificially lower payments rates that MultiPlan and Data iSight sought.

16. DiP used the IMS database on an undifferentiated nationwide basis, meaning that geography was not taken into consideration when calculating the CF.

17. RVUs and GPCIs are components that are used to calculate the amount that Medicare will pay for a claim. They are not based on usual and customary rates; instead, the Medicare formula is based on the resources that Medicare believes go into providing a specific service.

18. An RVU is a Relative Value Unit. It is a measure of value used in Medicare's reimbursement formula. Medicare's reimbursement formula is based on the resources that it takes to provide a service, not the usual and customary charges. RVUs are based on Medicare's determination of the value of the resources used to provide a service divided into three separate RVU values: one for physician work, one for practice expense, and one for malpractice insurance expense.

19. A geographic practice cost index (GPCI) has been established for every Medicare payment locality for each of the three components of a procedure's relative value unit (i.e., the RVUs for work, practice expense, and malpractice). The GPCI has 112 different geographic areas. By contrast, there are 1,471 geographic zip codes. The GPCI is intended to account for the varying cost of resources by geographic area, not the varying cost of billed services.

20. Data iSight uses the Medicare RVUs and GPCIs to derive the payment amount. The problems in doing so are at least two-fold. RVUs and GPCIs are all based on Medicare's assessment of how resources are used in providing specific services, not the charges of similar providers in the same geographic areas as is required by the plan SPDs.

27

21. Once the engine yields the DiP, United and Data iSight engaged the second phase of the underpayment scheme: the "meet or beat."

22. DiP was always compared to a target payment, or benchmark, amount. Within MultiPlan this was known as the "meet or beat" price.

23. The target payment is controlled by Aetna and/or CIGNA, who either provides a target price, or indicates the methodology MultiPlan should use to derive a target price. This target is then passed with the claim as it goes through FRED and subsequent processes. It is the rate MultiPlan compares to the rate FRED and its subsequent processes derive.

24. In all cases, Aetna and/or CIGNA had control over the Target Price and MultiPlan had complete control over its implementation of Data iSight.

25. The Data iSight engine's objective was to beat United's target payment.

26. MultiPlan was paid based on how much it undershot the target payment.

27. Typically, MultiPlan was paid a fee equal to between 6% and 9% of the "margin" amount, i.e. the difference between the target amount sent over by Aetna and/or CIGNA with the claim, and the amount of the new, lower payment that Multiplan's Data iSight engine calculated.

28. The dollar amount ultimately paid for the claims in this case was the lowest of three numbers: Target Price, Billed Amount, or DiP. In every case, the compensation structure agreed upon between defendants incentivized artificially low payments.

28

29. While defendants would represent, among other things, that Data iSight derived payment was comparable to, and based on, what similar providers in Plaintiffs' geographic area charged for the same or similar services, in fact the purpose of the scheme was to produce a rate that was far lower than any reasonable or customary rate, in violation of the Plan SPDs, and a breach of fiduciary duty to the Plan beneficiaries.

30. The Data iSight Portal information also contributed to the scheme. The Data iSight Portal purported to describe a transparent basis for the reductions in billed amounts. In every single case, the Data iSight Portal contained numerous misrepresentations, including that the claims werepaid at median levels, claims about the objectivity and transparency of the IMS database, and claims about relationships to amounts similar provides accepted for similar codes. Furthermore, Claims Edits (or repricing), and the basis for them, were never disclosed in any explanations of payments received.

31. Claims edits/repricing are illegitimate, secret modifications to prices. Claim "editing" changed the billed service inputs.

32. The Data iSight engines applies its claims edits secretly, for reasons solely driven by cost reduction, with no clinical basis. The editing is performed by persons without clinicaltraining and without consultation of clinical records.

33. Any representation that numbers the derived from the Data iSight database are commensurate with the service billed and usual and customary rates are false, because the inputs to the DataiSight engine are not equivalent to the services billed and rendered.

34. The IMS Database that fueled the underpayment scheme was statistically invalid, inadequate, unvetted, and secret. Its inputs were undisclosed, and its purpose was to produce prices lower than the objectively provided prices available from national benchmarks such as the FAIR Health database.

35. Medicare pricing methodologies, including RVU's and GPCI's are inappropriately applied for many of the plans that cover patients whose claims are at issue here, and were omitted from the explanations of benefits for those plans.   As an ERISA fiduciary, Defendants owed, and owes, their members in ERISA plans, and their providers a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator or manager would use in the conduct of a like enterprise.

36. Further, ERISA fiduciaries must act in accordance with the documents and instruments governing the group plan.   29 U.S.C. §502(A)(2)&(3); 29 U.S.C. §1104(a)(1)(B)&(D).  In failing to act prudently, and in failing to act in accordance with federal ERISA laws and instruments governing the plan as detailed above, Defendants violated their fiduciary duty of care by engaging in arbitrary and capricious adverse claim determinations by improperly repricing out of network plan benefits in contradiction to the plan documents. As an ERISA fiduciary, Defendants owed and owes their members and their providers a duty of loyalty, defined as an obligation to make decisions in the interest of its members, and to avoid self-dealing or financial arrangements that benefit it at the expense of its

30

members under 29 U.S.C. §1106.  Defendants cannot make benefit determinations for the purpose of saving money at the expense of its members.

37) Defendants violated their fiduciary duties of loyalty and due care by, *inter alia*, repricing claims below the rates required by the plans as detailed herein that were unauthorized by federal ERISA laws and/or the EOCs and SPDs and which benefited Defendants at the expense of their subscribers.

38) The Individual Plaintiffs are entitled to assert a claim for relief for Defendants' violation of their fiduciary duties under 29 U.S.C. § 1132(a)(3), including injunctive and declaratory relief.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

a. Declaring that Defendants have violated the terms of the federal ERISA laws and Plan EOCs and SPDs based upon their unilateral repricing of claim reimbursements below what is required by the plan documents which constitutes failure to provide a full and fair review of claims under 29 U.S.C. § 1133 and 29 U.S.C. § 1132(a)(1)(B), (a)(3) as well as awarding injunctive and declaratory relief to prevent Defendants' continuing actions detailed herein;

b. Declaring that Defendants have violated their fiduciary duties including the duties of loyalty and care to Plaintiffs, and awarding appropriate relief, including declaratory and injunctive relief to Plaintiffs;

c.  Awarding the plaintiffs disbursements and expenses of this action, including reasonable counsel fees, in amounts to be determined by the Court and other appropriate relief; and

d.  Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,
LAW OFFICE OF JEFFREY RANDOLPH, L.L.C.
Attorney for Plaintiffs

/s/ *Jeffrey Randolph*

By: _____
        Jeffrey B. Randolph, Esq. (JBR 5453)

Dated: January 19, 2022

32